THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE TROY AND LANSINGBURGH RAILROAD COMPANY, PLAINTIFF, v. JAMES W. COFFEY, CITY COMPTROLLER, AND OTHERS, CONSTITUTING THE BOARD OF LOCAL ASSESSORS OF THE CITY OF TROY, DEFENDANTS.

*Assessment — a license to a corporation under which it assumes a liability to pave a street — how the liability must be enforced — notice — performance within a reasonable time — estoppel.*

In 1867 the city of Troy passed an ordinance granting to a horse railroad company permission to lay its tracks in certain streets of that city, and as a condition required the company to pave the space between its rails, and for eighteen inches outside of them, so as to conform to such style of paving as the common council might order, and provided that, on the failure of the company to do any act required by the ordinance, the work might be done by the city; that by its acceptance of the ordinance the company agreed to pay any expense incurred by the city in the execution of such work, and that such expense might be collected by the city by suit.

The company accepted the ordinance and laid its tracks in the streets designated therein.

In 1889 the city ordered one of the streets so designated to be paved with granite blocks and a new curb-stone to be laid, the work to be done in ten days, and in default thereof that the work be done by the city and the expense be apportioned upon the property benefited as directed by law. The notice given was not directed to the company, but was directed to owners of property on the street, and stated that the expense would be charged upon the property benefited. The work could not be done in ten days, and subsequently the city did the work. The local assessors assessed about one-third of the cost upon the city, one-third upon the property benefited and one-third upon the railroad, which

PEOPLE ex rel. TROY & L. R. R. CO. v. COFFEY. 161

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

latter was the actual cost of paving between its tracks, and eighteen inches outside thereof.

The city charter, as it stood in 1889, provided that the city might order a street to be paved and a new curb-stone to be set, one-half of the expense to be paid by the city at large and the other half by the property benefited.

Upon the hearing on the return to a writ of *certiorari*, issued upon the petition of the railroad to review the action of the assessors, the court assumed that by accepting the ordinance of 1867 a valid contract was created between the railroad and the city, but

*Held*, that the method of assessment was erroneous.

That the city had evidently intended to proceed under the charter of 1889 and not under the ordinance of 1867.

That if it intended to proceed under the ordinance it was its duty to give notice to the company of what it required, to demand performance and to allow the company a reasonable time within which to perform the work.

That, under the charter, the proper method of assessment would have been to assess one-half of the expense upon the city and the other half upon the property benefited, including therein the company's property.

That the city was not authorized by the ordinance to make the assessment, as its remedy for the recovery of the expenses incurred in the execution of the work was by action, as prescribed by the ordinance.

That as the company had had no notice that the city was proceeding under the ordinance, it was not estopped from questioning the assessment by the fact that it had not objected to the work and had taken an active part in the work. (HERRICK, J., dissenting.)

CERTIORARI to review the proceedings of James W. Coffey, City Comptroller, John F. Bridgman, City Chamberlain, and Charles L. Fuller, City Engineer, comprising the board of local assessors of the city of Troy, in regard to an assessment for paving a part of River street, Troy, by which assessment the Troy and Lansingburgh Railroad Company was, as alleged, improperly charged with part of the expense thereof.

*R. A. Parmenter*, for the relator.

*William J. Roche*, for the defendants.

PUTNAM, J.:

This *certiorari* is brought to review an assessment made by the board of local assessors of the city of Troy against relator's property, amounting to $25,764.74, for paving a portion of River street, in said city, in which relator's tracks are placed. The facts as stated in the case, as far as necessary to detail them, are as follows:

162   PEOPLE ex rel. TROY & L. R. R. CO. v. COFFEY.

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

"Under the city charter, as amended by chapter 317 of the Laws of 1889, which last act went into effect on the 29th day of May, 1889, it is, among other things, provided that 'whenever the said common council shall order any street, avenue or highway, which is forty feet or upwards in width, to be paved or macadamized and new curb-stone to be set in connection with said pavement, one-half of the entire expense of such pavement, macadamizing and curb-stone, including the pavement or macadamizing, and cross-walks at the intersection of streets, avenues, highways, squares and alleys, shall be charged upon the real and personal property liable to taxation in the city of Troy, and shall be paid by the city at large, and the other half of such expense shall be assessed and be a lien upon the property benefited or to be benefited thereby as provided by this act.'

"On the 19th day of September, 1889, the said common council passed, and in due time the mayor of said city of Troy approved a resolution in these words, to wit: 'Resolved, That the owners of property on River street, from Hoosick street to the north boundary line of the city, be and are hereby ordered to cause said street to be paved with granite block pavement, and set twenty-inch curb-stone along the gutter line. Said work to be performed within ten days, and in default thereof the contracting board is hereby directed to cause the said work to be done, and the expense thereof shall be apportioned and assessed by the local assessors upon the property benefited pursuant to law.'

"That the local improvement ordered by said resolution comprised the paving of said River street with granite block pavement, with a twenty-inch curb-stone along the gutter line of said street, from Hoosick street to the north boundary line of the city of Troy, through and over the entire length of eleven city blocks, a distance of about four thousand six hundred and fifty-four feet; and said roadway of said street so ordered to be paved is about thirty-six feet in width, and the track of the Troy and Lansingburgh railroad runs through the entire length, and still further north and south; and the width of River street is about sixty feet."

It is conceded that the work directed by the foregoing resolution could not have been done in ten days. The authorities of the city afterwards performed the work directed to be done by said resolu-

PEOPLE ex rel. TROY & L. R. R. CO. *v.* COFFEY. 163

Third Department, November Term, 1892.

tion — not, however, for the entire distance of River street — at an expense of $78,295.47.

The board of local assessors charged the said expense as follows: Twenty-five thousand seven hundred and sixty-four dollars and seventy-three cents against relator, twenty-six thousand two hundred and sixty-five dollars and four cents against the city at large, and a like sum against the several owners of land abutting on River street along the line of said improvement.

It appears by the return of the defendants, that there are 7,487.53 square yards of paving between the tracks of said company in River street, and for and including a distance of eighteen inches outside of each rail, which, at the contractor's price for said pavement, three dollars and forty cents per yard, and including a proper proportion incurred for incidental expenses, amounts to the sum above mentioned charged against relator. It thus appears that the board of local assessors assessed against relator the actual cost of paving between its rails and eighteen inches outside thereof. The defendants in the return state that the relator is, in fact, benefited to the full amount charged against the company by the new pavement.

It is evident that if chapter 317 of the Laws of 1889, which was in force when the ordinance of the common council of the city of Troy above referred to was passed, is applicable to the assessment complained of by relator, the action of the board of assessors was unauthorized. Under this statute the board should have divided the expense of the pavement, $78,294.04, in two parts, one of which should have been charged to the city at large, and the other assessed against relator's and the other property benefited.

But defendants in charging against relator the sum of $25,764.73 on occount of said pavement did not, as appears by their return, attempt to do so under chapter 317 of the Laws of 1889 (*supra*), but claimed that such act did not apply to the assessment in question, because of the clause therein that "nothing herein contained shall be held to repeal, modify or affect the conditions or obligations of any existing contract or license, between the city of Troy and any person or corporation." That on January 29, 1867, defendants passed an ordinance granting a license to relator to lay its tracks on the street in question and other streets. That section 4 of said ordinance is as follows:

164 PEOPLE ex rel. TROY & L. R. R. CO. *v.* COFFEY.

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

" Section 4. That in laying down the rails they shall put trap rock or Belgium blocks on the inside and the outside of the rail, and also lay a line of granite or trap rock blocks on the outside of each rail which shall be six inches deep, and alternating blocks eight inches square, with six by eight inches, with sufficient cobble-stone pavement to keep the blocks in place, and pave the space between the rails, and eighteen inches outside thereof with Belgium pavement, and shall hereafter conform to such style of paving and stone used as the common council may order, and in case said company refuse, omit or neglect to do any act required to be done by this ordinance, then the same may be done by and under the direction of the common council, or the proper officers of the city, and the expense thereof shall be a lien upon said road, and the company in accepting the license given under this ordinance agree to pay such expense, and that such expense shall be a claim against said company, to be collected in an action to be brought by the mayor, recorder, aldermen and commonalty of the city of Troy against said company."

Said ordinance also provided that it was passed on condition that the relator accept the same in writing, and it is not denied that said acceptance was afterwards duly made. Defendants insist that this license, which was accepted by relator, created a valid contract on its part, or liability to pave between its rails and eighteen inches outside thereof, with such pavement as should be directed by the common council of the city, and on its failure to obey the order of the common council the latter might lawfully do the work and charge the expense to relator, as provided in the ordinance, and that under section 10 of the act of 1889 above quoted, this contract, theretofore made between the city and relator, and the liability of the latter to obey the direction of the city in regard to pavement, was not affected.

I assume, in this discussion, that this position of defendants is correct, and without any careful examination of the matter am inclined to agree with the view of the counsel for defendants in that regard.

It being assumed, therefore, that the contract or liability of the relator, made by the license above mentioned and its acceptance, remain in full force, notwithstanding the act of 1889, can the assessment complained of be sustained ?

PEOPLE ex rel. TROY & L. R. R. CO. v. COFFEY. 165

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

Although the city might enforce the contract or liability created by the license of January 29, 1867, and the acceptance thereof, it could also proceed and do the work in question, and assess therefor under the act of 1889. If the city intended to pave the street its whole width, pursuant to the provisions of the latter act, its proper course was to pass such a resolution as it did, order the work to be done, stating that if not performed such paving and curbing would be done by the city, and *the expense apportioned and assessed on the property benefited.*

If the city desired and intended to hold the relator to do the paving between its rails and for eighteen inches outside thereof, under the aforesaid contract or license, it was bound to so inform the company. In some way to notify it that the city, under the license, required it to pave, with granite, such portion of the street as it was bound thereunder to pave. It will be seen, under section 4 (*supra*), that if pavement other than "Belgium" is required to be used, an *order* of the common council is necessary. The city was also required to give relator a reasonable time within which to perform the work. It is conceded that it was impossible to do so within ten days, or within a much longer time.

It is evident that when the common council passed the resolution referred to, it was not with the view of holding the company to the liability imposed upon it by the license. It was intended to charge the whole expense, as provided by the act of 1889, upon the city and property benefited. But the city, being about to place in the street in question a new granite pavement, was compelled, if it desired to hold the company to its obligation, to pave, under section 4 of the ordinance of 1867, to pass a proper ordinance to give notice of what it required, to demand performance, and to allow a reasonable time to do the work.

I am unable to see that defendants have ever given any such notice. The resolution of the common council referred to was, in fact, a notice that no claim was made under the license. It was not directed to relator, but to owners of property *on* the street, and states that the expense of the improvement would be charged on the property benefited. Under the license, relator is not charged with the improvement on the ground of benefit to its property, but on the ground of the liability incurred by the acceptance of the license. A liability incurred in consideration of the right of running its cars

166    PEOPLE ex rel. TROY & L. R. R. CO. v. COFFEY.

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

in the streets of the city.    The company would be liable if the new pavement, instead of being a benefit to it, was, in fact, an injury. It, therefore, never had any notice that the city intended to hold it to the liability under the license, or that it was required to do the paving, or any opportunity to do such work.    I, therefore, am of the opinion that no liability on the part of the relator to pay for the expense of the aforesaid paving existed, except such liability to an assessment for its *pro rata* part of one-half of the cost of the work as may exist under the act of 1889.

I also think that, under section 4 of the ordinance of 1867, the defendants were not authorized to make the assessment in question. The remedy of the city, as provided by the ordinance, if it was, in fact, authorized to do the work in question at the expense of the company, is by action.    The assessment in question for such work, if not reviewed after four months, might be deemed made under the act of 1889, and by lapse of time conclude the company.

Defendants suggest that it appears by the return that relator made no objection to the work as it was progressing, but assisted and aided therein, taking an active and affirmative part in connection with such work.    That having laid by until the paving was done, relator should now be estopped from objecting to the assessment therefor.    The answer to this proposition is, that relator had no notice, direct or indirect, that the city was paving between the rails and for eighteen inches outside under the provisions of section 4 of the ordinance of 1867.    By the resolution of September 19, 1889, under which the paving was done, the company had the right to believe that the city did not intend to enforce its liability under section 4 (*supra*).    Such resolution was notice to the company that the city did not so elect.    Under it the expense of all the work was to be apportioned and assessed *upon the property benefited pursuant to law*, that is, under the act of 1889, one-half on the property benefited and one-half on the city at large.    Therefore, the company is in no way estopped, no demand being made, and no notice, express or implied, given that the city was doing the work under the license of 1867.    It might be argued with considerable force that the city by and under the language of the resolution of September nineteenth (*supra*) is estopped from making any claim against relator as licensee for the work done thereunder.

As above suggested, it is evident that when the city passed the resolution in question the liability of relator under the ordinance of 1867 was not thought of. It was then intended to assess the expense of the work provided by the resolution under the act of 1889, and that the idea of holding the company under the provisions of section 4 of the said ordinance was an after thought.

I think, therefore, that assuming that the city could have compelled relator to do the paving in question by giving proper notice, making a proper demand and affording the company a reasonable time to do the work, yet, having failed to give the notice or make the demand or afford any reasonable time to do the paving, the assessment in question is unauthorized.

There are other questions raised in the case which it is unnecessary to discuss.

I think the assessment in question should be reversed and set aside, with fifty dollars costs and disbursements.

MAYHAM, P. J., concurred; HERRICK, J., dissenting.

Assessment reversed and set aside, with fifty dollars costs and disbursements.